UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DAVID ROBERTS,

                              Plaintiff,

    v.                                                 No. 9:18-CV-1434
                                                          (GLS/CFH)

DONNA JULIANO, Registered Nurse, GCJ;
AMY VANALSTYNE, Registered Nurse, CCJ,

                              Defendants.

---

**APPEARANCES:**                            **OF COUNSEL:**

DAVID ROBERTS
15-A-4933
Eastern NY Correctional Facility
Box 338
Napanoch, New York 12458
Plaintiff pro se

Murphy Burns LLP                         THOMAS K. MURPHY, ESQ.
407 Albany Shaker Road
Loundonville, New York 12211

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se David Roberts ("Roberts"), an inmate who is currently in the

custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants,

Registered Nurse Donna Juliano ("Nurse Juliano") and Registered Nurse Amy

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

1

VanAlstyne ("Nurse VanAlstyne"), for their alleged interference with his constitutional rights arising under the Fourteenth Amendment during the time that he was confined as a pretrial detainee.  See Dkt. No. 13 ("Am. Compl."). Presently pending before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FED. R. CIV. P."). See Dkt. No. 19. Roberts responded in opposition to the motion, while Defendants have not filed a reply. See Dkt. No. 24  For the reasons that follow, it is recommended that Defendant's motion be granted in part and denied in part.

## I. Background

### A.  Facts

The facts are related herein in the light most favorable to Roberts as the non-moving party.  See section II.A. infra.  The allegations stem from the time that Roberts was confined—as a pretrial detainee—to the Greene County Jail ("GCJ") and Columbia County Jail ("CCJ").  See generally Am. Compl.  Since 2008, Roberts has suffered from glaucoma, which he describes as a serious medical condition that causes "chronic and severe eye[] pain[.]" Id. at 3.  Roberts alleges that due to this condition, he was prescribed Neurontin and "other prescription medications" for treatment.  Id.

Roberts was first confined to the GCJ as a pretrial detainee.[2]  See Am. Compl. at 4.  Upon his intake at that facility, Roberts requested that Nurse Juliano refer him to a

---

[2] In the Complaint, Roberts alleges that he was arrested and confined to GCJ on August 23, 2014, while in the Amended Complaint, Roberts alleges that he was arrested and confined to GCJ on August 11, 2015. Compare Dkt. No. 1 at 4, with Am. Compl. at 3; but see Am. Compl. at 4 ("August 23, 2014"). Although it does not impact the analysis that follows, it appears that Roberts was arrested in August 2014, rather than August 2015. See People v. Roberts, 161 A.D.3d 1381, 1382 (N.Y. App. Div. 3d Dept. 2018) (noting that Roberts was arrested by state troopers in August 2014 and that judgment, upon a verdict, was rendered by the Greene County Court on December 1, 2015).

medical doctor for "bouts of chronic and severe eye pain, migraine headaches, and eye pressure." Id. (internal quotation marks omitted). Although Nurse Juliano declined to send Roberts to a doctor, believing that his request was "simply not necessary," she did prescribe him medication that "she believed was appropriate" for the glaucoma. Id. at 5.

During the duration of his confinement at GCJ, Roberts repeatedly requested to be examined by a medical doctor, but each request was summarily denied by Nurse Juliano. See Am. Compl. at 5. Roberts alleges that because he was not seen by a doctor at GCJ, he was forced to suffer from "chronic and severe eye pain, [migraine] headaches, and hazy eye vision and eye flashes vision." Id. at 6. Roberts also noticed a rapid deterioration of his vision, which caused him to walk into walls and furnishings. See id.

At some unspecified point, Roberts was then transferred to the CCJ "without explanation." Am. Compl. at 7. Upon his intake, Roberts was examined by Nurse VanAlstyne. Id. at 8. At that time, Roberts complained that the glaucoma medication he received at GCJ was "ineffective," but Nurse VanAlstyne nonetheless provided with the same medication. Id. at 7-8. Roberts again made repeated sick-call requests while housed at CCJ—where he complained of "chronic and severe eye pain, [migraine] headaches, hazy vision[,] and flashes of light"—but Nurse VanAlstyne refused to allow him to be examined by a doctor. Id. at 8-9.

On December 11, 2015,[3] Roberts was transferred to the custody of the DOCCS. See Am. Compl. at 9. Upon his arrival at the Clinton Correctional Facility, Roberts was

---

[3] Plaintiff alleges in his Amended Complaint that he was transferred to DOCCS custody "on or about December 15, 2015[.]" Am. Compl. at 9, but a review of the DOCCS Inmate Lookup website reveals that Roberts was transferred four days earlier, on December 11, 2015. See, e.g., Perez v. Lilly, No. 17 CV

3

sent for an "immediate outside consultation with an 'Ophthalmologist Specialist.'" Id. at 10.  When he was examined, the doctor determined that he required eye surgery.  See id.  Roberts underwent surgery on March 15, 2016 for his left eye, and on August 21, 2016, for his right eye.  See id. at 10-11.  He alleges that despite the surgery, he was diagnosed as being "[l]egally [b]lind" in his left eye.  Id. at 11.

### B.  Procedural History

On December 5, 2018, Roberts commenced this action with the filing of a pro se civil rights complaint against, among others, two Jane Doe defendants.  See Dkt. No. 1.  Following the identification of those two defendants and the filing of the Amended Complaint, the undersigned directed Defendants to respond the Fourteenth Amendment medical indifference claims.  See Dkt. Nos. 7-8, 14,  In lieu of an answer, Defendants have moved, pursuant to FED. R. CIV. P. 12(b)(6), to dismiss the Complaint on the ground that the action is time-barred.  See Dkt. Nos. 19.  Roberts responded in opposition to the motion, and Defendants have not filed a reply.  See Dkt. No. 24.

### II. Discussion[4]

In their motion, Defendants argue that the claims asserted by Roberts are barred by the applicable statute of limitations.  Dkt. No. 19-2 at 11-13.  Specifically, Defendants

---

4222 (VB), 2018 WL 3768528, at *1 (S.D.N.Y. Aug. 8, 2018) (taking judicial notice of information contained on the DOCCS Inmate Lookup website); Jackson v. Sullivan Cty., 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018) (same); Williams v. City of N.Y., No. 07-CV-3764 (RJS), 2008 WL 3247813, at *2 (S.D.N.Y. Aug. 7, 2008) (using DOCCS's inmate tracking website).

[4]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to Roberts.

argue that Roberts has not alleged any wrongful acts within the applicable statute of limitations period. See id. In opposition, Roberts argues that the action is timely because it did not accrue until the time that he was diagnosed as being "legally blind" in 2016. Dkt. No. 24 at 3-4. Roberts, who is confined to a "sensorial disability [u]nit" at his correctional facility, also invokes principles of statutory and equitable tolling. Id. at 2-4.

### A. Legal Standard for Motions Pursuant to Fed. R. Civ. P. 12(b)(6)

Under FED. R. CIV. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe [the] plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in [the] plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a pleading must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v.

5

Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible") (internal quotation marks and citation omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).

### B.  Statute of Limitations

As the statute of limitations is an affirmative defense, on a motion to dismiss pursuant to that defense, "the defendant has the burden of demonstrating, based on the

allegations in the complaint, that the claim is untimely." Egan v. Kennedy, No. 04-CV-6626 (CJS), 2008 WL 4647740, at *3 (W.D.N.Y. Oct. 17, 2008).  Although 42 U.S.C. § 1983 does not contain a statute of imitations provision, "42 U.S.C. §1988 endorses the borrowing of state-law limitations provisions where doing so is consistent with federal law."  Owens v. Okure, 488 U.S. 235, 239 (1989).  In New York, the applicable statute of limitations for a section 1983 suit is three years, which is derived from the general or residual personal injury laws of the forum state.  See N.Y. C.P.L.R. § 214(5); Owens, 488 U.S. at 249-50; Romer v. Leary, 425 F.2d 186, 187 (2d Cir. 1970); Lugo v. Senkowski, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (applying Owens in establishing a three-year statute of limitation for section 1983 claims).  Therefore, the Fourteenth Amendment medical indifference claims in this suit are subject to New York's three-year statute of limitations.

In addition, federal law governs the determination of the accrual date for purposes of a section 1983 claim.  See Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).  A claim accrues "when the plaintiff knows or has reason to know" of the harm.  Id. (citations and internal quotation marks omitted).  "The crucial time for accrual purposes is when the plaintiff becomes aware that he [or she] is suffering from a wrong for which damages may be recovered in a civil action."  Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980).

Although the issue was not addressed by Defendants, see Dkt. No. 19-2 at 11-13, when the opposition papers are construed with the appropriate pro se leniency, it appears that Roberts may also be invoking the continuing violation doctrine, see Dkt. No. 24 at 2-3.  "The continuing violation doctrine is an 'exception to the normal knew-or-

7

should-have-known accrual date.'" Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999)). "To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy.'" Shomo, 579 F.3d at 181 (quoting Harris, 186 F.3d at 250). "'[A] continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act.'" Warren v. Sawyer, No. 9:15-CV-0591 (GTS/DEP), 2016 WL 1558460, at *5 (N.D.N.Y. Apr. 15, 2016), aff'd, 691 F. App'x 52 (2d Cir. 2017) (quoting Harris, 186 F.3d at 250). Significantly, however, "[a] continuing violation cannot be established merely because the [plaintiff] continues to feel the effects of a time-barred . . . act." Harris, 186 F.3d at 250.

### 1. Application

Preliminarily, even when the allegations in the Amended Complaint are afforded the appropriate deference in light of Roberts' pro se status, the undersigned concludes that he has not alleged any facts that would plausibly suggest that the continuing violation doctrine is applicable to his medical indifference claims. See Am. Compl. at 10-13. Naked assertions that Defendants acted with deliberate indifference are entirely conclusory and cannot suffice to invoke the doctrine. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Roberts also has not set forth any facts that would plausibly suggest that GCJ or CCJ maintained an ongoing

policy that connects any potentially time-barred medical treatment with some non-time-barred acts taken in the furtherance of that policy. See Shomo, 579 F.3d at 181. Likewise, although Roberts discovered that he was legally blind at some point following his left eye surgery on March 15, 2016, "[a] continuing violation cannot be established merely because the [plaintiff] continues to feel the effects of a time-barred . . . act." Harris, 186 F.3d at 250.

Having determined that the continuing violation doctrine does not apply, the undersigned turns next to whether the action was timely commenced. Contrary to Defendants' assertion that the action was commenced on December 12, 2018—which is the date that the Complaint was received by the Court—the action was commenced on December 5, 2018, which is the date that Roberts signed the Complaint and is presumed to have given it to prison officials.[5] See Dkt. No. 1 at 21. As a result, in order to be considered timely, the Fourteenth Amendment medical indifference claims must have accrued within the three years preceding that date, or no earlier than December 5, 2015. See Owens, 488 U.S. at 249-50.

Defendants acknowledge that the "Amended Complaint fails to provide the dates for many of the occurrences alleged[.]" Dkt. No. 19-2 at 8. Despite the absence of factual allegations, Defendants request that the undersigned conclude that the predicate events occurred "weeks, if not months" prior to Roberts' transfer to DOCCS custody on

---

[5] Under the "prison mailbox rule," the date of filing is generally presumed to be the date that an inmate delivers his or her complaint to a prison guard for mailing. See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). "In the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." Hardy v. Conway, 162 F. App'x 61, 62 (2d Cir. 2006) (summary order) (collecting cases). Here, the Complaint was signed on December 5, 2018, postmarked on December 10, 2018, and received by the Court on December 12, 2018. See Dkt. No. 1. Accordingly, the undersigned concludes that the action was commenced on December 5, 2018. See id.

9

December 11, 2015.  See id.  The undersigned is constrained, however, to construe the Amended Complaint liberally, accept all factual allegations as true, and draw "all reasonable inferences in [the] plaintiff['s] favor."  Selevan, 584 F.3d at 88.

Defendants also request that the undersigned consider the allegations contained in the originally filed Complaint in adjudicating their motion.[6]  See Dkt. No. 19-2 at 9.  Specifically, they note that in the Complaint, Roberts alleged that he complained to CCJ officials about Nurse VanAlstyne's conduct in early September 2015, which means that all of the acts attributable to Nurse Juliano at GCJ are time-barred by virtue of the fact that those acts would have necessarily occurred prior to his transfer to CCJ.  See id.  Although the undersigned is disinclined to exercise his discretion in a way that results in the dismissal of a pro se litigant's claim—particularly here when many of the dates in the Complaint and Amended Complaint are entirely inconsistent, compare Dkt. No. 1, with Am. Compl.—the intentional omission of relevant dates should also not save a pleading from dismissal on statute of limitations grounds.  See Mann v. Bartolotta, No. 3:08-CV-1834 (PCD), 2009 WL 1098982, at *2 (D. Conn. Apr. 21, 2009).  Accordingly, when the allegations in the Complaint and Amended Complaint are read together, the undersigned agrees with Defendants that the claim against Nurse Juliano accrued at some point prior to September 2015 and are, therefore, time-barred.

---

[6] It is well-established "that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."  See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  However, courts have occasionally exercised their discretion to consider allegations in prior iterations of a pro se plaintiff's complaints, when that discretion is consistent with the principle that courts must afford "special solicitude" to pro se litigants before granting a motion to dismiss.  See Austin v. Ford Models, Inc., 149 F.3d 148, 155-56 (2d Cir. 1998), abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); see also Elliott v. City of Hartford, 649 F. App'x 31, 32 (2d Cir. 2016) (summary order).

The same is not true for Nurse VanAlstyne.  If Roberts was confined to GCJ until his transfer to DOCCS custody on December 11, 2015, then the medical indifference claim against her are timely because the action was commenced on December 5, 2018.  Although this leaves an extremely narrow window for the claim against Nurse VanAlstyne to accrue, Defendants have simply failed to carry their burden of demonstrating that the medical indifference claim against her are untimely.  Accordingly, it is recommended that Defendants' motion to dismiss be granted with respect to Nurse Juliano, but denied with respect Nurse VanAlstyne.

### C.  Statutory and Equitable Tolling

To the extent that Roberts invokes principles of statutory and equitable tolling, the undersigned offers the following analysis with respect to the claims against Nurse Juliano.  Although it is well-settled that federal law determines the accrual of a cause of action arising under section 1983, tolling principles are informed by state law, unless those state principles would "'defeat the goals'" of section 1983.  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (quoting Hardin v. Straub, 490 U.S. 536, 539 (1989)).  In New York, the statute of limitations period may be extended "[i]f a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues," N.Y. C.P.L.R § 208, but such tolling "is not appropriate where a plaintiff does not act with reasonable diligence."  Levermore v. De Silva, 465 F. App'x 16, 17 (2d Cir. 2012) (summary order).  "Physical ailments, however, do not suffice to invoke the New York tolling provisions."  Baroor v. New York City Dep't of Educ., 362 F. App'x 157, 159-60 (2d Cir. 2010) (summary order); see also Mandarino

v. Mandarino, 408 F. App'x 428, 431 (2d Cir. 2011) (summary order) (noting that tolling is only available to "those individuals who are unable to protect their legal rights because of an over-all inability to function in society" may avail themselves of equitable tolling by reason of infancy or insanity under New York law).

Still, the Second Circuit has also applied so-called "equitable tolling" in section 1983 cases "in 'rare and exceptional circumstances,' where we found that 'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [sought] to toll.'" Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (quoting Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004)). The Second Circuit has cautioned, however, that "[a]s a general matter, we set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (stating the equitable tolling doctrine is "to be applied sparingly"). The plaintiff bears the burden of establishing equitable tolling. See Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).

### 1. Application

In his opposition papers, Roberts alleges that he is a "legally blind" inmate that depends upon his fellow inmates to assist him with his legal work. Dkt. No. 24 at 3-4. This visual impairment is not adequate to invoke statutory tolling under N.Y. C.P.L.R. § 208. See Baroor, 362 F. App'x at 159-60. This is particularly true in the absence of any evidence that the visual disability has caused Roberts to suffer from an over-all inability to function in society. See e.g., Walker v. Raja, No. 17-CV-5202 (PKC/LB), 2020 WL

606788, at *13 (E.D.N.Y. Feb. 7, 2020) (concluding that the visually impaired plaintiff could not benefit from statutory tolling due, in part, to his failure to demonstrate an over-all inability to function in society).

At the same time, Roberts has failed to meet his burden of establishing his entitlement to equitable tolling. See Boos, 201 F.3d at 185. There is nothing before the court that would suggest that this is one of the "rare and exceptional" cases where the invocation of equitable tolling is warranted. Doe, 391 F.3d at 159. In addition, although Roberts asserts that he relies on other inmates to assist him with his legal work, the undersigned is unable to conclude that Roberts acted with the requisite "reasonable diligence" in bringing this action. Id. Accordingly, Roberts has failed to carry his burden of establishing his entitlement to equitable tolling and the undersigned recommends that the Court conclude that Roberts should not benefit from statutory or equitable tolling with respect to the medical indifference claim against Nurse Juliano.

### III. Conclusion

**WHEREFORE**, based upon the reasons outlined herein, it is hereby:

**RECOMMENDED**, the motion to dismiss based upon FED. R. CIV. P. 12(b)(6) (Dkt. No. 19) be **GRANTED** as to Defendant Registered Nurse Donna Juliano and that she be **DISMISSED** from the action **WITH PREJUDICE**; and it is further

**RECOMMENDED**, that the motion to dismiss based upon FED. R. CIV. P. 12(b)(6) (Dkt. No. 19) be **DENIED** as to Defendant Registered Nurse Amy VanAlstyne; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[7]

Dated: July 20, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).